# Hickey *v.* Caldwell, Appellant.

*Negligence—Master and servant—Fellow servant—Vice principal—Foundry.*

Where two owners of a foundry have no practical knowledge of the business, and delegate to a workman the absolute control and management of the foundry and of the employees engaged in constructing molds and making castings, with power to employ and discharge the men, such employee becomes a vice principal, and if he is negligent in permitting a mold to be used in casting before it is sufficiently dry, and when it is in an unfit and dangerous condition, and a workman is in consequence injured, the owners of the foundry are liable to the workmen for the injuries sustained.

Argued May 5, 1908. Appeal, No. 71, Jan. T., 1908, by defendant, from judgment of C. P. McKean Co., June T., 1906, No. 89, on verdict for plaintiff in case of Martin Hickey v. E. R. Caldwell and R. R. Caldwell. Before Fell, Brown, Mestrezat, Elkin and Stewart, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Bouton, P. J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $3,000. Defendant appealed.

*Error assigned* was in not giving binding instructions for defendant.

*John G. Johnson,* and *W. E. Burdick* with them, *M. L. Willis,* for appellant.—Knapp was not a vice principal: Ross v. Walker, 139 Pa. 42; Ricks v. Flynn, 196 Pa. 263; Casey v. Asphalt Paving Co., 198 Pa. 348; Buck v. Zinc Co., 204 Pa. 132; Duffy v. Platt, 205 Pa. 296.

*J. P. Mullin,* of *Mullin & Mullin,* for appellee.—Knapp was a vice principal: Lininger v. Air Brake Co., 210 Pa. 62; Lewis v. Seifert, 116 Pa. 628; Dyer v. Bridge Co., 198 Pa. 182; Reese v. Clark, 198 Pa. 312; Newton v. Vulcan Iron Works, 199 Pa. 646; Butterman v. Construction Co., 206 Pa. 82.

Opinion by Mr. Justice Mestrezat, May 25, 1908:

The defendant partnership is engaged in the foundry and machine business in Bradford City, this state. The plaintiff was employed as a laborer in the foundry. A mold had been made for a casting, weighing about ten tons, and while the plaintiff was assisting in pouring the molten metal into the mold an explosion occurred which threw some of the metal on the plaintiff, resulting in serious injury to him. The molds are made of damp sand, and must be dried and baked before they can be used with safety. On the occasion of the accident to the plaintiff, the explosion occurred by reason of the

molten metal having been poured into the mold before it was properly dried.

It appeared from the evidence that neither of the partners is a practical molder or ever had any practical experience in the molding business. The firm employed one Anthony Knapp, a molder, who had supervision of the foundry, subject to the directions of E. R. Caldwell who had general charge of the defendant's business. E. R. Caldwell had delegated to Knapp his authority within certain limits. Knapp employed and discharged men, he directed the molds to be made and it was his duty to look after them and see that they were correctly made and in safe condition before they were used. In other words, he had general supervision over the construction and use of the molds. Some of the witnesses testified that Knapp apparently had full control of the foundry. The Caldwells, having no practical knowledge of the business, necessarily left the management of the foundry business to Knapp.

The mold which exploded and caused the plaintiff's injuries was constructed by Nicholas Zims and another molder with the assistance of two helpers. They began the work on Monday or Tuesday and finished it on the following Friday, when they put a gas fire in it to dry it. It seems from the testimony that it requires at least two days to dry the mold before it is fit or safe for use. On Saturday morning, the day after the completion of the mold, Zims examined it, and informed Knapp that "it is mud, not fit to cast." Zims told Knapp that the mold was not fit to put water in, let alone iron. He also called a helper and by the use of a rod they showed Knapp that the mold was wet and was not in a suitable condition to receive molten metal. Knapp, however, insisted upon making the casting; he said they must cast as they needed the space, and directed Zims to proceed with the work. Zims replied, " If we must, we will; but it is a very dangerous proposition." In attempting to make the casting, the explosion occurred by reason of the mold not having been sufficiently dried and baked.

The learned trial judge submitted the case to the jury. He instructed them that it was the duty of the firm to furnish the employees, including the plaintiff, a suitable and properly dried and baked mold for the reception of the iron; that if

the defendant firm delegated to Knapp the authority to construct the mold, to determine when it was suitable to receive the metal, and the defendant exercised personally no authority over it, then Knapp would be a vice principal; and if Knapp neglected to furnish a proper mold and his negligence in failing to do so resulted in the plaintiff's injuries, the plaintiff was entitled to recover in the case. The learned judge left to the jury to determine whether the mold furnished on the occasion of the accident was in proper and suitable condition for use, and whether Knapp was a vice principal exercising the authority of the defendant in the construction of the mold. By the verdict, the jury has found that the mold was not suitable and that its construction was under the supervision of Knapp who was at the time the vice principal of the defendant.

The assignments of error raise but a single question, and that is, whether under all the evidence in the case the plaintiff was entitled to recover. The case was clearly for the jury and was properly submitted by the learned judge. It was unquestionably the duty of the defendant to furnish reasonably safe instrumentalities or appliances for their employees to perform the service for which they were employed. In making the casting, the mold was an instrumentality or appliance with which the work was to be done by the plaintiff and the other employees. The duty to furnish this appliance rested upon the defendant; it was a personal obligation and required the defendant to provide a suitable and reasonably safe mold. The plaintiff did not assist in making the mold, nor was it his duty to see that the mold was safe or in a fit condition for use. When he was directed by his employer to assist in making the casting, he had a right to assume that the mold was in a safe condition. He had no knowledge to the contrary; he did not know and had no reason to believe that it was wet and unfit for use. It was delivered to the plaintiff and the other employees and they were to use it in making the casting, and they could rely on it being baked and in a suitable condition.

Under the evidence in the case, the jury were fully justified in finding that Knapp was a vice principal. He had entire charge of this part of the work of the defendant firm. This

was necessarily so, because the partners themselves were not practical molders nor had they any experience in the business. While one of the partners had general supervision over the entire work, yet Knapp had the authority to make the molds, to supervise the making of the castings, and to direct the employees about the work; in a word, he had the absolute control and management of the foundry and of the employees engaged in constructing the molds and in making the castings. As testified by E. R. Caldwell, one of the partners, he had general supervision over the defendant's foundry and machine business, and he delegated to Knapp his authority within certain limits; and those limits included the management and control of the foundry department of the defendant's business.

That Knapp was negligent in the performance of his duties, and that such negligence resulted in the plaintiff's injuries, there can be no doubt. This clearly appears from the plaintiff's evidence, and the defendant introduced no testimony to contradict it. On Saturday morning, the day of the accident, the mold was wet and wholly unfit for use. Knapp was advised of this fact, and he did not then nor did he on the trial of the cause deny that the mold was in an unfit and dangerous condition when he ordered the casting to be made. Knapp insisted on making the casting and assigned as a reason that it must be made because they needed the room. As testified by Zims, "it was just a case of too much hurry up; if we had fired it another day and night, and waited to cast it Sunday, there would have been no trial to-day." With a knowledge of the unsafe and dangerous condition of the mold, it was negligence on the part of the defendant, by its vice principal, to direct the casting to be made; and the responsibility for the negligence of the vice principal must rest upon the defendant.

The assignments of error are overruled and the judgment is affirmed.